IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **TONEE N. JARRETT, personally, and as the Administrator of the ESTATE OF ARNO ANTONIO JARRETT;**<br><br>**Plaintiff,**<br><br>v.<br><br>**JANE DOES 1-25, JOHN DOES 1-25, and RODNEY JONES,**<br><br>**Defendants.** | Civil Action No.:<br><br>District Judge:<br>Magistrate Judge:<br><br>**CIVIL ACTION – LAW**<br>**JURY TRIAL DEMANDED** |

## COMPLAINT

**AND NOW** comes the Plaintiff, TONEE N. JARRETT, personally, and as the Administrator of the ESTATE OF ARNO ANTONIO JARRETT, by and through her counsel, DEVON M. JACOB, ESQUIRE, of the law firm of JACOB LITIGATION, INC., and BENJAMIN L. CRUMP, ESQUIRE, of BEN CRUMP LAW, PLLC; and her local counsel, SETH R. CARROLL, of the COMMONWEALTH LAW GROUP, to aver as follows:

I. **JURISDICTION AND VENUE**

1. This action is brought pursuant to 42 U.S.C. § 1983.

1

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue is proper in this Court, as all parties are located within the Western District of Virginia, and the cause of action arose in the Western District of Virginia.

## II. IDENTIFICATION OF DECEDENT and PARTIES

4. The Decedent is ARNO ANTONIO JARRETT ("ARNO") who was killed on July 3, 2020, at the age of 47. On the date of his death, ARNO was a resident of Wise County, Virginia.

5. Plaintiff, TONEE N. JARRETT ("TONEE"), is an adult female who during all relevant times was a resident of Springfield, Illinois. The Circuit Court of Wise County and City of Norton (Virginia) appointed TONEE the Administrator of the ESTATE OF ARNO ANTONIO JARRETT (ESTATE").

6. Defendants, JANE DOES 1-25 ("JANE DOE"), are adult females who during all relevant times were employed by the Red Onion State Prison, located in Wise County, Virginia. All of JANE DOES' actions or inactions were taken under color of state law. They are sued in their individual capacities.

7. Defendants, JOHN DOES 1-25 ("JOHN DOE"), are adult males who during all relevant times were employed by the Red Onion State Prison, located in Wise County, Virginia. All of JOHN DOES' actions or inactions were taken under color of state law. They are sued in their individual capacities.

8. Defendant, RODNEY JONES ("JONES"), is an adult male who during all relevant times was incarcerated in the Red Onion State Prison, located in Wise County, Virginia.

### III. MATERIAL FACTS

9. ARNO ANTONIO JARRETT ("ARNO") was a sentenced inmate incarcerated in the State of Arkansas.

10. The Arkansas Department of Corrections ("ADOC") transferred ARNO from its physical custody to the physical custody of the Red Onion State Prison ("Red Onion"), 10800 H Jack Rose Highway, Pound, Wise County, Virginia 24279.

11. Red Onion opened in August of 1998 and can house approximately 800 inmates.

12. Red Onion is a level six supermax facility; one of the most restrictive and secure prison facilities in Virginia.

13. Red Onion was designed to minimize contact between corrections officers and prisoners, as well as among prisoners.

14. The Director of the Virginia Department of Corrections ("VDOC") who helped to design the facility stated, "It's not a nice place . . . and I designed it not to be a nice place."

3

15. JANE/JOHN DOE(S) knew that Red Onion has a long history of inmate-on-inmate violence.

16. JANE/JOHN DOE(S) knew that Red Onion's correctional practices and conditions of confinement have long been criticized.

17. For over 20 years, the violence, correctional practices, and conditions of confinement have been the subject of investigations and critical reports by among others, Human Rights Watch, Amnesty International, Interfaith Action for Human Rights, the United States Department of Justice, Washington Post, and HBO.

18. The VDOC claims that ARNO was transferred to Red Onion for "administrative reasons regarding his management."

19. VDOC further claims that ADOC did not want the public to know where ARNO was incarcerated.

20. As such, VDOC did not list ARNO as an inmate in its custody on its website and denied ARNO video visitation.

21. Due to COVID protocols in place at the time, VDOC also denied ARNO in-person visitation.

22. During the relevant period of time, RODNEY JONES ("JONES") was an inmate incarcerated at Red Onion.

23. JONES was a 54-year-old male serving a life sentence for first degree murder, second degree murder, carjacking, and robbery.

24. JANE/JOHN DOE(S) permitted JONES to have contact with ARNO.

25. JANE/JOHN DOE(S) also placed ARNO and JONES in a cell together.

26. On July 3, 2020, JONES killed ARNO without legal justification.

27. On February 17, 2021, a Wise County, Virginia grand jury returned a true bill inditing JONES for the crime of Capital Murder – Va. Code § 18.2-31.

28. The criminal case against JONES is pending in the Wise Circuit Court, 30th Judicial Circuit of Virginia, docketed at CR21F00060-00.

29. Plaintiff attempted to investigate her civil claims by requesting all documents related to ARNO'S incarceration and death from VDOC pursuant to Virginia Freedom of Information Act (Va. Code § 2.2-3700 et seq.).

30. Except for ARNO'S medical records, the VDOC refused to produce any of the requested documents on the basis that the documents are protected from disclosure pursuant to Va. Code §§ 2.2.-3706(B)(4), 2.2-3705.2(14), 2.2-3705.1(1), and 2.2-3705.5(1).

31. Plaintiff also attempted to investigate her claims by requesting information and documents from the prosecutors who are prosecuting JONES.

32. Citing the pending criminal case and Virginia law, the prosecutors denied the request.

33. Plaintiff also attempted to investigate her claims by unsuccessfully requesting information and documents from JONES' criminal defense counsel.

34. The withheld documents contain the identity of the JANE/JOHN DOE Defendants, through incident reports, investigation reports, witness statements, and audio and video recordings.

35. Pursuant to FED.R.CIV.P. 11(b)(3), the following factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery:

    a. JANE/JOHN DOE(S) knew that Red Onion housed some of the most dangerous inmates in the United States.

    b. JANE/JOHN DOE(S) knew that on more than one occasion, inmates at Red Onion have killed other inmates without legal justification.

    c. JANE/JOHN DOE(S) knew that an inmate at Red Onion who had previously unlawfully killed an inmate at a different facility, and warned that he would kill again, managed to unlawfully kill a second inmate at Red Onion.

    d. As such, JANE/JOHN DOE(S) knew that inmates assaulting and killing other inmates at Red Onion was not a theoretical concern but a known continuing dangerous condition.

    e. JANE/JOHN DOE(S) knew that the inmate-on-inmate violence that took place at Red Onion resulted from a failure to adhere to VDOC policies intended to prevent such violence.

  f. JANE/JOHN DOE(S) knew that the inmate-on-inmate violence that took place at Red Onion resulted from a failure to adhere to standard training and practices in the industry intended to prevent such violence.

  g. JANE/JOHN DOE(S) knew that ARNO was not placed in the general prison population because he was in physical danger.

  h. JANE/JOHN DOE(S) knew that ARNO was being held in protected custody status because he was in physical danger.

  i. JANE/JOHN DOE(S) knew that based on ARNO'S classification and housing status, they owed him a specific duty of protection above and beyond the general duty of protection provided to all inmates.

  j. JANE/JOHN DOE(S) knew that based on ARNO'S classification and housing status, they owed him a duty of monitoring and supervision above and beyond the general duty of monitoring and supervision provided to all inmates.

  k. JANE/JOHN DOE(S) knew that studies indicate that the conditions of incarceration in a supermax facility have been known to cause mental illness and/or increased violent tendencies.

  l. Despite this knowledge, JANE/JOHN DOE(S) deliberately and recklessly did not monitor JONES to ensure that he had not become emotionally unstable and more violent.

      m.     JANE/JOHN DOE(S) deliberately and recklessly failed to properly screen JONES to determine what if any threat he posed to ARNO before permitting JONES to have access to ARNO.

      n.     In the alternative, JANE/JOHN DOE(S) new that JONES was a threat to ARNO but permitted JONES to have access to ARNO anyway.

      o.     JANE/JOHN DOE(S) new that they were required to physically check on ARNO pursuant to a specific schedule, understood the grave danger to ARNO if they failed to do so, but deliberately and recklessly did not do so.

      p.     JANE/JOHN DOE(S) new that they were required to monitor ARNO'S physical wellbeing by video monitoring, understood the grave danger to ARNO if they failed to do so, but deliberately and recklessly did not do so.

      q.     JANE/JOHN DOE(S) knew that accepted prison industry standards intended to protect inmates like ARNO from physical harm were not being followed, understood the grave danger to inmates like ARNO if they continued not to be followed, but deliberately and recklessly continued the practice.

      r.     JANE/JOHN DOE(S) supervisors knew that JANE/JOHN DOE(S) subordinates were engaged in the aforementioned conduct, appreciated the grave danger that this presented to inmates like ARNO, but deliberately and recklessly permitted the conduct to continue.

  s. JANE/JOHN DOE(S) supervisors knew that there was insufficient staffing to safely operate Red Onion, understood the grave danger to inmates like ARNO if they continued to operate in this manner, but did so anyway.

  t. JANE/JOHN DOE(S) supervisors knew that necessary classification information was not being communicated to correctional personnel who were responsible for the protection of inmates like ARNO, understood the grave danger to inmates like ARNO if they continued to operate in this manner, but did so anyway.

  u. JANE/JOHN DOE(S) supervisors knew that necessary threat assessment information was not being communicated to correctional personnel who were responsible for the protection of inmates like ARNO, understood the grave danger to inmates like ARNO if they continued to operate in this manner, but did so anyway.

  v. As a direct result of the aforementioned deliberate and reckless conduct, JONES was provided with the opportunity and means to unlawfully kill ARNO and did so.

## IV. <u>LEGAL CLAIMS</u>[1,2]

### <u>COUNT I</u>

**Plaintiff v. Defendants JANE/JOHN DOE
Eighth Amendment (Failure to Protect)
Pursuant to 42 U.S.C. § 1983**

36. Paragraphs 1-35 are incorporated herein by reference.

37. An inmate has an Eighth Amendment right to be protected from violence perpetrated by other prisoners. <u>Danser v. Stansberry</u>, 772 F.3d 340 (4th Cir. 2014); <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

38. To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm. <u>Farmer</u>, 511 U.S. at 834.

---

[1] In a Complaint, a Plaintiff is only required to plead facts, not legal theories. See <u>Johnson v. City of Shelby</u>, 574 U.S. 10 (2014) (Per Curiam) (reversing Fifth Circuit and holding that only facts need to be pled in a complaint, not legal theories). Plaintiff is only required to plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U. S. 544, 569-70 (2007); <u>Ashcroft v. Iqbal</u>, 556 U. S. 662 (2009). Plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P 8(a)(2). "Each allegation must be simple, concise, and direct. No technical form is required." FED.R.CIV.P. 8(d)(1).

[2] <u>See</u> Va. Code § 8.01-229(K) (tolling the statute of limitations in any personal injury action for damages during the pendency of a criminal proceedings arising out of the same facts).

39. JANE/JOHN DOE'S deliberate and reckless conduct constitutes a failure to protect in violation of the Eighth Amendment.

40. As a direct and proximate result of the Defendants' conduct, ARNO suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and death.

41. As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorneys' fees and litigation costs.

## COUNT II

### Plaintiff v. Defendants JANE/JOHN DOE
### Eighth Amendment (Supervisor Liability)
### Pursuant to 42 U.S.C. § 1983

42. Paragraphs 1-35 are incorporated herein by reference.

43. To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994).

44. To satisfy the requirements of the first element, a plaintiff must

11

establish: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984).

45. Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id.

46. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." Id.

47. JANE/JOHN DOE'S deliberate and reckless conduct constitutes a failure to supervise in violation of the Eighth Amendment.

48. As a direct and proximate result of the Defendants' conduct, ARNO suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and death.

49. As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorneys' fees and litigation costs.

## COUNT III

**Plaintiff v. Defendants JANE/JOHN DOE
Eighth Amendment (Bystander Liability)
Pursuant to 42 U.S.C. § 1983**

50. Paragraphs 1-35 are incorporated herein by reference.

51.     Under a theory of bystander liability, an officer may be liable if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., 302 F.3d 188 (4th Cir. 2002).

52.     JANE/JOHN DOE each had an appreciable opportunity to intervene to prevent the aforementioned conduct from occurring or continuing to occur but deliberately and recklessly failed to do so.

53.     JANE/JOHN DOE'S deliberate and reckless failure to intervene constitutes a violation of the Eighth Amendment.

54.     As a direct and proximate result of the Defendants' conduct, ARNO suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and death.

55.     As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorneys' fees and litigation costs.

## COUNT IV

### Plaintiff v. Defendant JONES
### Battery
### (Virginia Law)

117.    Paragraphs 1-35 are incorporated herein by reference.

118.    A battery is an intentional and unwanted touching of another without justification, excuse, or the consent of the other.

13

119. JONES' conduct constitutes a battery on ARNO'S person.

120. The Defendant's wrongful and reckless actions caused ARNO to suffer serious injury and death.

121. As a direct and proximate result of the Defendant's conduct, ARNO suffered embarrassment, humiliation, physical and psychological harm, and pain and suffering.

122. As a direct and proximate result of the Defendant's conduct, Plaintiff has and will incur attorneys' fees and litigation costs.

## COUNT V

**Plaintiff v. Defendants
Survival
(Va. Code § 8.01-25)**

123. Paragraphs 1-35 are incorporated herein by reference.

124. The Defendants' wrongful and reckless conduct caused ARNO to suffer serious injury, and conscious physical and emotional pain and suffering.

125. Plaintiff is the duly appointed Administrator of the ESTATE.

126. Plaintiff, as the duly appointed Administrator of the ESTATE, is asserting this Survival claim on behalf of ARNO, to recover all damages permitted by law.

127. As a direct and proximate result of the Defendants' conduct, ARNO suffered embarrassment, humiliation, physical and psychological harm, and pain and suffering.

128. As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorneys' fees and litigation costs.

## COUNT VI

**Plaintiff v. Defendants**
**Wrongful Death**
**(Va. Code § 8.01-50)**

129. Paragraphs 1-35 are incorporated herein by reference.

130. The Defendants' wrongful and reckless conduct caused ARNO to suffer serious injury and death.

131. Plaintiff is the duly appointed Administrator of the ESTATE.

132. Plaintiff, as the duly appointed Administrator of the ESTATE, is asserting this wrongful death claim on behalf of herself and all survivors and heirs, to recover all damages permitted by law.

133. ARNO did not have a spouse.

134. ARNO is survived by his children: Antonio Washington, Tonee Jarrett, Antonio Malik Jarrett and Aaron Jarrett.

135. As a direct and proximate cause of Defendants' conduct, which caused ARNO'S wrongful death, ARNO'S survivors and heirs suffered a financial loss

associated in large part with mental anguish, lost services, society, guidance, companionship, relationship, and comfort.

136. As a direct and proximate result of the Defendants' conduct, Plaintiff has and will incur attorneys' fees and litigation costs.

## V. REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in her favor as follows:

A. **Declaratory Judgment:** Providing that the Defendants' individual and collective conduct violated ARNO'S and ARNO'S survivors and heirs' state and federal rights;

B. **Compensatory Damages:** Including, but not limited to, the monetary value associated with the following: violations of legal rights, emotional distress, emotional injury, embarrassment, mental anguish, loss of reputation, loss of support, loss of relationship, physical injury, pain and suffering, loss of enjoyment of life, loss of life, and death;

C. **Punitive damages** as permitted by law;

D. **Equitable Relief:** An admission of the allegations stated in the Complaint, in writing, and an oral and written apology for same, in person, from the Defendants;

E. **Attorney's Fees and Costs**; and

F.      **Discretionary Damages and Relief:** Such other financial or equitable relief that the Court deems reasonable and just.

VI.     **JURY TRIAL DEMAND**

Plaintiff respectfully requests a trial by jury on all claims/issues in this matter that may be tried to a jury.

**Respectfully Submitted,**

|                                                                    |                          |
|--------------------------------------------------------------------|--------------------------|
| **SETH R. CARROLL, ESQUIRE**                                       | Date: June 30, 2022      |

**SETH R. CARROLL, ESQUIRE**
VA Bar Number: 74745
**COMMONWEALTH LAW GROUP**
3311 W. Broad Street, Richmond, VA 23230
804.835.6306 | scarroll@hurtinva.com
(Plaintiff's Local Counsel)


Date: June 30, 2022

**DEVON M. JACOB, ESQUIRE**
PA Bar Number: 89182
**JACOB LITIGATION, INC.**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com
(Plaintiff's Counsel) (Pro Hac Vice to be Filed)


**BENJAMIN L. CRUMP, ESQUIRE**
FL Bar Number: 72583
**BEN CRUMP LAW, PLLC**
122 S. Calhoun Street, Tallahassee, Florida 32301
850.224.2023 | court@bencrump.com
(Plaintiff's Counsel) (Pro Hac Vice to be Filed)