CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

September 09, 2025

LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **TONEE N. JARRETT, Personally, and as the Administrator of the Estate of Arno Antonio Jarrett,** | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:22CV00012 |
| v. | ) ) | **OPINION AND ORDER** |
| **DAVID A. STILL, ET AL.,** | ) ) | JUDGE JAMES P. JONES |
| Defendants. | ) ) | |

*Devon M. Jacob, JACOB LITIGATION, INC., Mechanicsburg, Pennsylvania, and Seth R. Carroll, COMMONWEALTH LAW GROUP, Richmond, Virginia, for Plaintiff; and D. Patricia Wallace, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Defendants.*

While incarcerated in a Virginia maximum security prison, Arno Antonio Jarrett was murdered by his cellmate, Rodney K. Jones, who believed Jarrett to be an informant. The plaintiff, as administrator of Jarrett's estate, filed this action asserting Eighth Amendment and pendent state tort claims against eleven correctional officers, contending that they are ultimately responsible for Jarrett's death. The defendants have moved to dismiss the claims. Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, the Motion to Dismiss will be granted in part and denied in part. The plaintiff will be granted leave to amend.

## I. BACKGROUND.

### A. Facts Alleged.

The following factual allegations by the plaintiff must be accepted as true for the purposes of this Opinion.

At the time relevant to this suit, Rodney Jones and the decedent, Arno Antonio Jarrett, were inmates at the Red Onion State Prison (Red Onion). Jones had a "Keep Separate" alert on his face sheet, purportedly related to his gang affiliation. He was also classified as violent, had been convicted of murder, and was serving a life sentence. Although Jarrett had tattoos that identified him as a member of a rival gang to that of Jones, both men were housed together in the same cell. During this time, Jones's Keep Separate alert was active.

On July 3, 2020, Jones and Jarrett engaged in a fight inside their shared cell, which lasted approximately twenty minutes. Jarrett's body was not discovered until approximately two hours later. His cause of death was determined to be strangulation and blunt force injuries. Jones later pleaded guilty to second-degree murder.[1]

### B. Procedural History.

On June 30, 2022, the plaintiff filed an initial Complaint against Jones and unnamed Virginia Department of Corrections (VDOC) employees, referred to as

---

[1] Jones is also a defendant to this action but has not responded.

John and Jane Does.  She filed a First Amended Complaint (FAC) on September 6,

2023, after identifying A. Bentley, Combs, Fleming, Hall, Moore, Still, and

Williams as defendants.  The plaintiff then filed a Second Amended Complaint

(SAC) on November 27, 2023,[2] identifying J. Bentley, Day, Duncan, and Turner as

the remaining defendants.[3]

On March 12, 2024, defendants A. Bentley, J. Bentley, Combs, Day, Duncan,

Hall, Moore, Still, Turner, and Williams moved to dismiss the SAC.  The plaintiff

filed a Third Amended Complaint (TAC) on March 26, 2024, without seeking leave

of the Court or written consent from the defendants.[4]  Fed. R. Civ. P. 15(a).

Accordingly, the Court treated the TAC as a Motion to Amend and directed the

defendants to respond to the restyled Motion to Amend and the plaintiff to reply to

---

[2]  The defendants assert that they did not consent to the SAC.  However, after filing
the SAC, but prior to this court's acceptance of it, the plaintiff obtained written
confirmation from the defendants consenting to the filing of an SAC.

[3]  The VDOC defendants are categorized by the plaintiff into three classes: The "Pod
Defendants" (A. Bentley, Combs, Hall, and Moore), the "Supervisory Defendants"
(Fleming, Still, and Williams), and the "Housing Defendants" (J. Bentley, Day, Duncan,
and Turner).

[4]  The primary substantive differences between the TAC and the SAC are that the
TAC elaborates on J. Bentley's duties as a gang specialist; states that Jones' purported gang
affiliation was public knowledge, and that he and Jarrett belonged to rival gangs; claims
Jones's active alert was likely related to his gang affiliation; states that Jones accused
Jarrett of being a snitch; states that the defendants' actions provided Jones with a motive
to kill Jarrett; and elaborates on the defendants' duty to check the interior of Jones and
Jarrett's cell when Jarret did not exit.

the Motion to Dismiss the SAC.  Order, Dkt. No. 54.  This briefing has been

accomplished, and the motions are ripe for decision.

## II.  STANDARD OF REVIEW.

To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, "to state a claim to relief that is plausible on its face."  *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if the

complaint contains "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged," and if there is

"more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although a

complaint does not need to contain detailed factual allegations to survive a motion

to dismiss, it must contain more than bare assertions and legal conclusions.

*Twombly*, 550 U.S. at 555–56.

The court should "freely give leave to amend when justice so requires."  Fed.

R. Civ. P. 15(a)(2).  If an amendment is futile, the Court may deny leave to amend.

*Ball v. Streeval*, 655 F. Supp. 3d 436, 440 (W.D. Va. 2023).  An amendment to a

complaint is futile if it would not survive a motion to dismiss.  *Id.*

Thus, the primary issue before the Court is whether the SAC, as amended by

the TAC, passes muster under recognized federal pleading standards.

## III.    DISCUSSION.

### A. Federal Rule of Civil Procedure 11(b)(3).

The SAC and the TAC rely upon Fed. R. Civ. P 11(b)(3), which allows for pleadings that either "have evidentiary support" or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." But Rule 11 does not alter the requirement that pleadings be plausible to survive a motion to dismiss. Rather, the rule is primarily concerned with attorney misconduct, stating that an attorney will not be sanctioned for making allegations that he currently lacks the evidentiary support for but will likely obtain through further investigation or discovery. *Id.* (b)–(c).

Nonetheless, pleading facts on information and belief "does not relieve litigants from the obligation to conduct an appropriate investigation into the facts," and does not permit parties to "make claims . . . without any factual basis or justification." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *Goldman v. Barrett*, 825 F. App'x. 35, 38–39 (2d Cir. 2020) (unpublished) (explaining that Rule 11 does not permit "rel[iance] on discovery to manufacture a claim that lacks factual support in the first instance."). The plaintiff's reliance on Rule 11(b)(3) is therefore misplaced.

## B. Statute of Limitations.

The plaintiff first raised her claims against defendants J. Bentley, Day, Duncan, and Turner (Housing Defendants) on November 27, 2023, in her SAC. The Housing Defendants argue that the statute of limitations bars the claims against them.[5] State law generally governs the proper statute of limitations, including in § 1983 actions. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Under Virginia law, personal injury actions must be brought within two years from when the cause of action accrued. Va. Code Ann. § 8.01-243(A). When an action accrues is a question of federal law. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975) ("Federal law holds that the time of accrual is when [the] plaintiff knows or has reason to know of the injury which is the basis of the action."). The defendants assert that the plaintiff had until July 3, 2022, two years after the date Jarrett died, to file her claims against the Housing Defendants. Instead, the plaintiff first raised her claims against the Housing Defendants on November 27, 2023, when she filed a SAC adding these defendants.

The plaintiff contends that her claims were tolled by Va. Code Ann. § 8.01-229(K), which states, in relevant part, "In any personal action for damages . . . if a criminal prosecution *arising out of the same facts* is commenced, the time such prosecution is pending shall not be computed as part of the period within which such

---

[5] A statute of limitations defense may be considered in a Rule 12(b)(6) motion "if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

a civil action may be brought." (emphasis added).  The criminal proceedings against

Jones were resolved in July 2022.  Therefore, the plaintiff's claims against the

Housing Defendants will have been tolled if this civil action stems from the same

facts as the criminal proceedings against Jones.

The defendants argue that tolling "does not apply to the security

classifications and housing decisions that had no place in the prosecution of Jones

for murder."  Defs.' Mot. Opp'n 7, Dkt. No. 55.  Specifically, they claim that "the

Housing Defendants' conduct had no bearing on establishing the intent (or any)

element of Jones' crime of murder" and "the conduct of others is not evidence of the

requisite intent to commit a crime."  *Id.* at 9.  However, the plaintiff asserts that the

housing decisions were relevant to motive, which was relevant to establishing that

Jones had the requisite mens rea to assault Jarrett.

Courts are divided on their interpretation of the "same facts" language.

*Compare Brown v. Edmonds*, No. 7:12-CV-00267, 2012 WL 2526735, at *2 (W.D.

Va. June 29, 2012) (finding that the facts needed to prove the crime of malicious

wounding were "not the same facts" as those needed to show what the correctional

authorities knew and their actions before the attack), and *Scott v. Coleman*, No.

CL09-326, 2011 WL 8964943, at *2 (Va. Cir. Ct. 2011) (stating that the tolling

provision was only meant to apply to the parties who were involved in the criminal

prosecution), *with Pinder v. Knorowski*, 660 F. Supp. 2d 726, 732 (E.D. Va. 2009)

(holding that "same facts" could include events leading up to the incident at issue and subsequent wrongs), *Wright v. Va. Peninsula Reg'l Jail Auth.*, No. 2:19CV189, 2020 WL 1055665, at *9 (E.D. Va. Mar. 4, 2020) (finding that the text of the statute "refer[s] to the general underlying facts surrounding the event that led the parties to bring cases in criminal and civil court), and *Singleton v. Wade*, No. 3:21CV553, 2022 WL 4349826, at *7 (E.D. Va. Sept. 19, 2022) ("[T]he plain language of the statute concerns factual circumstances and not parties.").

Here, the plaintiff has the stronger argument. It is plausible that the facts leading up to Jones's assault on Jarrett — namely, housing in the same cell two men belonging to rival gangs — helped to establish motive and, relatedly, mens rea. I will reject the statute of limitations defense.

**C. Eighth Amendment.**

**1. Failure to Protect.**

The Eighth Amendment bars the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. It "imposes duties on [prison] officials, who must provide humane conditions of confinement" and "take reasonable measures to guarantee the safety of the [prison's] inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). To prevail on a constitutional claim for failure to protect, the plaintiff must satisfy both an objective and subjective test. *See id.* at 834.

The objective test requires a plaintiff to establish that he suffered "a serious deprivation of his rights in the form of a serious or significant physical or emotional injury." *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014) (internal quotation marks and citation omitted). The plaintiff may alternatively establish that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

The subjective test requires a plaintiff show that the defendant had a "sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Id.* (internal quotation marks and citation omitted). The plaintiff must establish that the defendant was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the defendant drew that inference. *Id.* at 837. However, "[p]rison officials may not simply bury their heads in the sand and thereby skirt liability" for deliberate indifference. *Makdessi v. Fields*, 789 F.3d 126, 129 (4th Cir. 2015).

It is undeniable that Jarrett suffered significant physical injury. As to the "deliberate indifference" test, however, the plaintiff concludes that the defendants knew they created dangerous conditions but fails to provide factual support of any such knowledge. For example, the plaintiff does not explain why defendant Moore, a control room employee, would be aware of Jones and Jarrett's gang affiliations to infer that Jarrett was at risk of serious harm when he failed to emerge from his cell.

Additionally, the plaintiff does not establish that defendants Day, Duncan, and

Turner were aware of Jones' active alert or the respective gang affiliations when

they housed him with Jarrett; she only asserts that they were responsible for ensuring

that housing classifications complied with VDOC policies. But "an official's failure

to alleviate a significant risk that he should have perceived but did not will not give

rise to a claim under the Eighth Amendment." *Danser*, 772 F.3d at 347 (internal

quotation marks and citation omitted). It is similarly unclear whether defendants A.

Bentley, Combs, and Hall were aware of the risk Jones posed to Jarrett when

conducting security checks or falsifying logbooks, or that defendants Still and

Williams were aware of a substantial risk of serious harm.

The plaintiff adequately pleads a failure to protect claim only as to defendant

J. Bentley. Through his role as gang specialist, defendant J. Bentley was responsible

for interviewing Jones and Jarrett, documenting and reporting their tattoos, and

conducting an investigation pursuant to VDOC Operating Procedure. He thus would

have been aware that the men belonged to rival gangs and posed a serious risk to

each other. I will dismiss the failure to protect claims except as to defendant J.

Bentley.

## 2. Bystander Liability.

To succeed on a claim of bystander liability, the plaintiff must establish that

the officer "(1) knows that a fellow officer is violating an individual's constitutional

rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." (footnote omitted). *Randall v. Prince George's Cnty.,* 302 F.3d 188, 204 (4th Cir. 2002). *See, e.g.*, *Thomas v. Holly*, 533 F. App'x 208, 236–37 (4th Cir. 2013) (unpublished) (rejecting a claim for bystander liability when no evidence suggested that the defendants could see the unlawful activity or intervene to stop it); *Whitten v. Gunter*, 757 F. App'x 235, 236 (4th Cir. 2018) (unpublished) (affirming summary judgment in favor of prison officers who were neither in the cell nor able to see inside the cell when a fellow officer released his dog on an inmate).

In the present case, the plaintiff's allegations fall short of plausibly alleging bystander liability. For example, the plaintiff alleges that, because the Supervisory Defendants were charged with reviewing the work performances of their subordinates, they must have known that defendants A. Bentley, Combs, Hall, and Moore failed to perform security checks. As a result, the plaintiff argues, Jones was provided with the opportunity to assault Jarrett. But this allegation assumes that the Supervisory Defendants were simultaneously checking the work of their subordinates, which the plaintiff has not sufficiently established. Even if this were true, the plaintiff has not sufficiently alleged that any of the defendants besides J. Bentley were aware of the threat Jones and Jarrett posed to each other, or that defendant J. Bentley was aware of his colleagues violating Jarrett's rights. I will dismiss these claims.

-11-

### 3. Supervisory Liability.

To establish a supervisory liability claim, the plaintiff must show the following:

(1) [T]hat the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;

(2) [T]hat the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and

(3) [T]hat there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). The plaintiff must also show that the conduct was "widespread" or "has been used on several different occasions," rather than an isolated incident, and that the supervisor "has [a] basis upon which to anticipate the misconduct. *Id.* (internal quotation marks and citation omitted).

Like the preceding claim, the facts here are sparse. For instance, the plaintiff asserts that the "VDOC Defendant supervisors knew that necessary classification information was not being communicated to correctional personnel," but fails to show how they acquired this knowledge. TAC 26, Dkt. No. 52. Moreover, the plaintiff asserts that the "VDOC Defendants chose not to notify supervisors of the dangerous condition created by corrections officers, supervisors, and managers, not

performing their duties and responsibilities," which appears to cut against the allegations that the Supervisory Defendants were aware of conduct that posed an unreasonable risk of constitutional injury to Jarrett. *Id*. at 18.   The plaintiff's assertions are insufficient to plausibly allege that the Supervisory Defendants had actual or constructive knowledge of the gang affiliations, Jones' Keep Separate alert, or that the men posed a threat to each other.   I thereby dismiss the supervisory liability claims.

### 4. State Law Claims.

The TAC raises pendent state claims for survival pursuant to Va. Code Ann. § 8.01-25, and wrongful death under Va. Code Ann. § 8.01-50.[6]   The defendants assert that Virginia's wrongful death statute is "the exclusive statement of the grievances that Virginia will recognize when a tort victim dies of her injuries." *El-Meswari v. Washington Gas Light Co.*, 785 F.2d 483, 491 (4th Cir. 1986).   But pursuant to Virginia law, plaintiffs are not required to elect between a survival and wrongful death action pretrial if the record has yet to sufficiently establish that the decedent's personal injuries and death arose from the same cause. *Centra Health, Inc. v. Mullins*, 670 S.E.2d 708, 718 (Va. 2009).

---

[6]   The Court has supplemental subject-matter jurisdiction over state law claims if they form part of the same case or controversy, as here.  28 U.S.C. § 1367(a).

The TAC alleges that Jarrett would not have succumbed to the injuries Jones inflicted upon him had the correctional defendants provided Jarrett with timely medical care.  I will deny the defendants' Motion to Dismiss as to the state claims to allow for further development of the record.[7]

## 5.  Qualified Immunity.

Finally, the defendants contend that they are entitled to qualified immunity. The doctrine of qualified immunity shields government officials from liability for civil damages unless their conduct (1) violates a plaintiff's constitutional right; and (2) that right was clearly established at the time of the violation such that a reasonable person would have known.  *Walker v. Prince George's Cnty.*, 575 F.3d 426, 429 (4th Cir. 2009).  A clearly established right must be defined with specificity.  *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).  However, "general statements of the law are not inherently incapable of giving fair and clear warning to officers."  *Id.* at 105 (internal quotation marks and citation omitted).

Determining whether qualified immunity bars liability requires factual allegations be viewed in the light most favorable to the plaintiff.  *Smith v. Ray*, 781 F.3d 95, 98 (4th Cir. 2015).  As discussed, however, the plaintiff has not sufficiently alleged that the defendants' conduct, except as to defendant J. Bentley, violated the

---

[7]  The plaintiff also raises a state law battery claim against Jones.  As previously noted, Jones has not responded to the suit.

Eighth Amendment.  Accordingly, I will deny the qualified immunity defense at this stage of the case.

## IV.    CONCLUSION.

It is accordingly **ORDERED** as follows:

As noted, the Court has treated the Third Amended Complaint as a Motion to Amend.  This Motion to Amend is considered futile as to those issues discussed herein and thus the Motion to Amend, Dkt. No. 52, is DENIED.  The defendants' Motion to Dismiss, Dtk. No. 50, treated as a response to the Second Amended Complaint, is GRANTED in part and DENIED in part.  The plaintiff is GRANTED leave to file a Fourth Amended Complaint, provided it is filed no later than 21 days from the date of this Opinion and Order.

ENTER:    September 9, 2025

/s/  JAMES P. JONES
Senior United States District Judge